UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RYAN O'DELL,

    Plaintiff,

v.

IVERIC BIO, INC., ADRIENNE L. GRAVES, PH.D., MARK S. BLUMENKRANZ, M.D., AXEL BOLTE, PRAVIN U. DUGEL, M.D., JANE PRITCHETT HENDERSON, CHRISTINE ANN MILLER, CALVIN ROBERTS, M.D., GLENN P. SBLENDORIO,

    Defendants.

---

Civil Action No. 23-cv-04447

**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

**JURY TRIAL DEMANDED**

---

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.  This is an action brought by Plaintiff against Iveric Bio, Inc. ("Iveric Bio" or the "Company") and the members of Iveric Bio's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Iveric Bio by affiliates of Astellas Pharma Inc. ("Astellas").

2.  Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on May 23, 2023 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Splash Merger Sub, Inc. ("Merger Sub"), a wholly-owned subsidiary of Astellas, will merge with and into Iveric Bio, with Iveric Bio surviving as a wholly-owned subsidiary of Astellas (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on April 15, 2023 (the "Merger Agreement"), each Iveric Bio stockholder will receive $200.00 in cash (the "Merger Consideration") for each Iveric Bio share owned.

3. As discussed below, Defendants have asked Iveric Bio's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisors, BofA Securities, Inc. ("BofA") and Centerview Partners LLC ("Centerview" and together with BofA, the "Financial Advisors") in support of their fairness opinions.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Iveric Bio's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

**PARTIES**

9. Plaintiff is, and has been at all relevant times, an owner of Iveric Bio stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Adrienne L. Graves, Ph.D. has served as a member of the Board since 2018 and is the Company's Chair of the Board.

11. Individual Defendant Mark S. Blumenkranz, M.D. has served as a member of the Board since 2020.

12. Individual Defendant Axel Bolte has served as a member of the Board since 2007.

13. Individual Defendant Pravin U. Dugel, M.D. has served as a member of the Board since January 2023 and is the Company's President.

14. Individual Defendant Jane Pritchett Henderson has served as a member of the Board since 2018.

15. Individual Defendant Christine Ann Miller has served as a member of the Board since 2022.

16. Individual Defendant Calvin Roberts, M.D. has served as a member of the Board since 2019.

17. Individual Defendant Glenn S. Sblendorio has served as a member of the Board since 2017 and is the Chief Executive Officer of the Company.

18. Defendant Iveric Bio is a company incorporated under the laws of the State of Delaware and maintains its principal offices at 8 Sylvan Way, Parsippany, NJ 07054. The Company's stock trades on the NASDAQ Global Select Market under the symbol "ISEE."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Individual Defendants" or the "Board."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.   The Proposed Transaction**

21. Iveric Bio, a biopharmaceutical company, focuses on the discovery and development of novel treatments for retinal diseases with unmet medical needs. The Company develops Zimura, an inhibitor of complement factor C5 comprising GATHER1, which has completed Phase 2/3 clinical trial; GATHER2 that is in Phase 3 clinical trial for the treatment of geographic atrophy (GA) secondary to dry age-related macular degeneration (AMD); and STAR or OPH2005 that is in Phase 2b clinical trial for the treatment of autosomal recessive Stargardt disease. Its preclinical product candidatures include IC-500, a high temperature requirement A serine peptidase 1 protein inhibitors for the treatment of GA and other age-related retinal diseases. The Company also develops OPH2001 that has completed Phase 1/2a clinical trial of various doses

4

of avacincaptad pegol (ACP) administered as a monotherapy for the treatment of GA; OPH2000, which has completed Phase 1/2a clinical trial of various doses of ACP administered in combination with Lucentis for the treatment of wet AMD; OPH2007 that has completed Phase 2a clinical trial for the treatment of wet AMD; and OPH2002, which has completed Phase 2a clinical trial for the treatment of idiopathic polypoidal choroidal vasculopathy.  In addition, its minigene programs comprise the miniCEP290 program for LCA10; miniABCA4 Program for STGD1; and miniUSH2A Program for usher syndrome type 2A-Related inherited retinal diseases (IRDs).  The Company was formerly known as Ophthotech Corporation and changed its name to IVERIC bio, Inc. in April 2019.  The Company was incorporated in 2007 and is based in Parsippany, New Jersey.

22. On April 30, 2023, Astellas and the Company jointly announced the Proposed Transaction:

> TOKYO and PARSIPPANY, N.J., April 30, 2023 /PRNewswire/ -- Astellas Pharma Inc. (TSE: 4503, President and CEO: Naoki Okamura, "Astellas") and Iveric bio, Inc. (NASDAQ: <u>ISEE</u>, CEO: Glenn P. Sblendorio, "Iveric Bio") today announced that on April 29, 2023 (Japan time), the Companies have entered into a definitive agreement under which Astellas through Berry Merger Sub, Inc., a wholly-owned subsidiary of Astellas US Holding, Inc., has agreed to acquire 100% of the outstanding shares of Iveric Bio for US$40.00 per share in cash for a total equity value of approximately US$5.9 billion (the "Acquisition"). In the Acquisition, Iveric Bio will become an indirectly wholly-owned subsidiary of Astellas. The total equity value of Iveric Bio in the Acquisition assumes that there are approximately 148.2 million outstanding shares of Iveric Bio common stock on a fully diluted basis. The purchase price represents a premium of 64% to Iveric Bio's unaffected closing share price of US$24.33 on March 31, 2023, and a premium of 75% to Iveric Bio's 30 trading day volume weighted average price as of March 31, 2023. The Boards of Directors of both companies have unanimously approved the transaction.

"We are pleased to reach an agreement with Iveric Bio, a company with exceptional expertise in the R&D of innovative therapeutics in the ophthalmology field." said Naoki Okamura, President and CEO, Astellas. "Iveric Bio has promising programs including Avacincaptad Pegol ("ACP"), an important program for Geographic Atrophy ("GA") secondary to Age-Related Macular Degeneration ("AMD"), and capabilities across the entire value chain in the ophthalmology field. We believe that this acquisition will enable us to deliver greater VALUE to patients with ocular diseases at high risk of blindness."

"This transaction with Astellas, a highly respected pharmaceutical company, demonstrates the significant value that we have built for our stockholders and recognizes the tremendous work by our dedicated team at Iveric Bio," said Glenn P. Sblendorio, Chief Executive Officer of Iveric Bio. "The opportunity to create a world-class entity with the ophthalmology expertise and capabilities of Iveric Bio and the global reach and resources of Astellas is unique and has the potential to benefit patients worldwide suffering from blinding retinal diseases, including GA," said Pravin U. Dugel, MD, President of Iveric Bio.

Strategic Objectives of the Acquisition
Astellas aims to become a cutting-edge, VALUE-driven life science innovator to realize its VISION to be "on the forefront of healthcare change to turn innovative science into VALUE for patients."Through Astellas' R&D strategy, Focus Area Approach, it is working to create innovative drugs for diseases with high unmet medical need by identifying unique combinations of biology and therapeutic modality / technology from multiple perspectives. Currently, Astellas has identified five Primary Focuses, including "Blindness & Regeneration", and is prioritizing investment resources in these areas. As such, this transaction is a key step in building Astellas' product portfolio in this important area.

Iveric Bio focuses on the discovery and development of novel treatments in the field of ophthalmology. The company announced in February 2023 that the U.S. Food and Drug Administration ("FDA") accepted for filing a New Drug Application ("NDA") for ACP for the treatment of GA secondary to AMD. The NDA has been granted priority review with a Prescription Drug User Fee Act ("PDUFA") goal date of August 19, 2023.

ACP, a complement C5 inhibitor, is an investigational drug for GA secondary to AMD and has significant potential to deliver value to a large and underserved patient base. ACP met its primary efficacy

endpoint (reduction of the rate of GA progression) with statistical significance across two pivotal clinical trials, (GATHER Clinical Trials) and has received breakthrough therapy designation[*1] from the FDA for this indication.

Astellas expects that the acquisition of Iveric Bio will not only contribute to Astellas' FY2025 revenue targets set in its Corporate Strategic Plan 2021, but also, that ACP in conjunction with fezolinetant and PADCEV, is anticipated to be a revenue-generating pillar to help compensate for the decline in sales of XTANDI due to anticipated patent expiration later this decade.

In addition, the acquisition of Iveric Bio will provide a foundation of ophthalmology focused capabilities, including a multi-faceted commercial team, expansive network of experts in the ophthalmology field, established relationships with medical institutions, and the infrastructure and experience to drive our combined ophthalmology business going forward. Furthermore, through acquired capabilities, Astellas will accelerate pre-clinical and clinical development and commercialization activities to positively contribute to the goals of Primary Focus, "Blindness & Regeneration."

Funds for the acquisition consist of newly procured funds from bank loans and issuing of commercial paper totaling approximately 800 billion yen and existing cash on hand. Astellas expects to repay this debt within the next five to seven years. The completion of the Acquisition is not subject to a financing condition. Astellas does not anticipate making any change in its dividend policy following the Acquisition.

The closing of the proposed Acquisition is subject to approval by Iveric Bio's stockholders and other customary closing conditions, including receipt of required regulatory approvals. The companies expect to complete the Acquisition in the second quarter of Astellas' fiscal year 2023 (third calendar quarter of 2023). A copy of the merger agreement regarding the proposed Acquisition will be filed with the U.S. Securities and Exchange Commission ("SEC") and will be publicly available on the SEC's website at (http://www.sec.gov).

* * *

Financial Impact of the Acquisition
The impact of the consummation of the Acquisition on Astellas' financial results is not reflected in Astellas' consolidated financial forecasts for the fiscal year ending March 31, 2024, that were

announced on April 27, 2023. Astellas is still reviewing the impact and will promptly announce any events that are to be publicly reported.

Financial and Legal Advisors
J.P. Morgan Securities LLC, acting through its affiliate JPMorgan Securities Japan Co., Ltd., is acting as exclusive financial advisor to Astellas and Jones Day is acting as Astellas' legal counsel. BofA Securities, Inc. and Centerview Partners LLC are serving as Iveric Bio's exclusive financial advisors and Skadden, Arps, Slate, Meagher & Flom LLP is serving as Iveric Bio's legal counsel, with Wilmer Cutler Pickering Hale and Dorr LLP advising on general corporate and licensing matters.[1]

\* \* \*

23.     The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Iveric Bio's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

B.      **The Materially Incomplete and Misleading Proxy Statement**

24.     On April 28, 2023, Iveric Bio filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed

---

[1] *Astellas Enters into Definitive Agreement to Acquire Iveric Bio*, PR NEWSWIRE (Apr. 30, 2023), https://www.prnewswire.com/news-releases/astellas-enters-into-definitive-agreement-to-acquire-iveric-bio-301811623.html.

decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

25. The Proxy Statement fails to provide material information concerning financial projections by Iveric Bio management and relied upon by the Financial Advisors in their analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the Financial Advisors to aid them in forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Iveric Bio management provided to the Board and the Financial Advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-03 (Del. Ch. 2007).

26. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: EBIT and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics *and/or* a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

27. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate

9

suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

      28.      The SEC has noted that:

> [C]ompanies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[2]

      29.      Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

      30.      In addition, the Proxy Statement fails to disclose the specific risk adjustments Company management made to derive the risk-adjusted Projections and fails to include non-risk-adjusted projections, which are necessary in order for Company shareholders to evaluate the impact of the risk adjustments made by Company management.

---

[2] U.S. Securities and Exchange Commission, *Non-GAAP Financial Measures*, last updated Apr. 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

*Omissions and/or Material Misrepresentations Concerning BofA's Financial Analyses*

31. With respect to BofA's *Selected Publicly Traded Companies Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics for each company selected by BofA for the analysis; (ii) the inputs and assumptions underlying the enterprise value to PoS Adjusted CY+3 revenue multiple reference range of 3.5x to 6.0x; and (iii) the number of fully-diluted shares of the Company's common stock outstanding.

32. With respect to BofA's *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics for each transaction selected by BofA for the analysis; and (ii) the enterprise value to PoS Adjusted CY+3 revenue multiple reference range of 4.5x to 8.5x.

33. With respect to BofA's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the terminal value for the Company; (ii) the inputs and assumptions underlying the perpetuity growth rate of 5.00%; (iii) the inputs and assumptions underlying the discount rates ranging from 11.50% to 15.00%; (iv) the weighted cost of capital of the Company; and (v) the number of fully diluted outstanding Company shares.

34. With respect to BofA's *Wall Street Analysts Price Target* analysis, the Proxy Statement fails to disclose: (i) the research analysts observed; and (ii) the public market trading price targets for the shares of Iveric Bio common stock prepared and published by each research analyst.

35. With respect to BofA's *Premia Calculation* analysis, the Proxy Statement fails to disclose: (i) the transactions and the premia paid in those transactions; and (ii) the inputs and assumptions underlying the premia reference ranges of 55% to 130% as applied to the Unaffected

Share Price on March 31, 2023 and 70% to 135% as applied to the 60-Day VWAP of Company common stock of March 31, 2023.

*Omissions and/or Material Misrepresentations Concerning Centerview's Financial Analyses*

36. With respect to Centerview's *Selected Public Company Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics of each company selected by Centerview for the analysis; (ii) the inputs and assumptions underlying the reference range of 3-Y Revenue Trading Multiples of 3.5x to 5.5x.

37. With respect to Centerview's *Selected Precedent Transaction Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics of each transaction selected by Centerview for the analysis; (ii) the inputs and assumptions underlying the reference range of EV/3-Year Forward Revenue Trading Multiples of 5.0x to 8.0x.

38. With respect to Centerview's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the implied terminal value for the Company; (ii) the inputs and assumptions underlying the perpetuity decline rate of 5.0% year over year; (iii) the inputs and assumptions underlying the discount rate ranging from 12.0% to 14.0%; (iv) the impact of an assumed equity raise in the third quarter of 2023 as set forth in the Projections.

39. With respect to Centerview's *Analyst Price Target Analysis*, the Proxy Statement fails to disclose: (i) the research analysts observed; and (ii) the public market trading price targets for the shares of Iveric Bio common stock prepared and published by each research analyst.

40. With respect to Centerview's *Premia Paid Analysis*, the Proxy Statement fails to disclose: (i) the eighteen selected transactions and the premia paid in those transactions; and (ii) the inputs and assumptions underlying the illustrative premia reference range of 40.0% to 80.0% as applied to the Company's closing stock price on March 31, 2023 and April 27, 2023, and the

reference range of 60.0% to 100.0% to the 60-Day VWAP of the shares of Common stock as of March 31, 2023 and April 27, 2023.

41. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

42. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

44. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial

projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

45. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders, although they could have done so without extraordinary effort.

46. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

47. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

48. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

49. The Individual Defendants acted as controlling persons of Iveric Bio within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Iveric Bio, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of Iveric Bio, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

50. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

51. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Iveric Bio, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

52. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the

Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

53. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

54. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

55. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: May 26, 2023

          **WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

          /s/ *Benjamin Y. Kaufman*
Benjamin Y. Kaufman
Rourke C. Donahue
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4620
Fax: (212) 686-0114
kaufman@whafh.com
donahue@whafh.com

*Attorneys for Plaintiff*